ORIGINAL

FILED IN OPEN COURT
U.S.D.C. Atlanta

MAR 1 9 2026

By: Kev___ W___ner, Clerk
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LUTHER DAVIS | Criminal Information<br><br>No. 1:26-cr-00122 |

THE UNITED STATES ATTORNEY CHARGES THAT:

## Background

At all times relevant to this Information:

1. Defendant LUTHER DAVIS, a former Division I college football player, was the founder and operator of RockSource, a sports management and representation company, based in the Northern District of Georgia.

2. CJ Evins was the founder and operator of Deed Chasers LLC, a company registered in the State of Georgia. Deed Chasers LLC served as the registered agent for companies that appeared to be associated with certain professional football players.

3. Aliya Sports Finance ("Aliya Sports"), located in Miami, Florida, operated as a private lender that provided professional athletes alternative financial solutions when traditional ones were unavailable.

4. All Pro Capital Funding, located in Annapolis, provided non-bank, specialty lending to professional athletes, entrepreneurs, business owners, banks, and others seeking to qualify using their commercial assets or cash flows.

5. Sure Sports, located in Hollywood, Florida, operated and managed a network of lending partners throughout the United States. Sure Sports acted as an underwriting and servicing company that brokered loans by connecting professional athletes with their lending partners.

6. X.M, D.N., and M.P., were active professional football players in the National Football League ("NFL").

## Count One
## Conspiracy to Commit Wire Fraud
## 18 U.S.C. § 371

7. The allegations contained in Paragraphs 1 through 6 are hereby realleged and incorporated by reference as though fully set forth herein.

8. Beginning on a date unknown, but at least by on or about May 26, 2023, and continuing to on or about October 25, 2024, in the Northern District of Georgia and elsewhere, the defendant, LUTHER DAVIS, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with CJ Evins, to commit offenses against the laws of the United States, that is: to devise and intend to devise a scheme and artifice to defraud lenders, and to obtain money and property from these lenders by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, and for the purpose of executing this scheme, to cause wire communications to be transmitted in interstate commerce, in violation of Title 18, United States Code, Section 1343.

## Manner and Means

9. Beginning no later than in or around May 2023 and continuing through in or about October 2024, the defendant, LUTHER DAVIS, and CJ Evins, executed a scheme to fraudulently obtain millions of dollars in loans from multiple lenders, including, but not limited to, Aliya Sports and All Pro Capital Funding, by impersonating professional football players and falsely claiming those players were seeking muti-million dollar loans.

10. It was part of the scheme and artifice to defraud that defendant DAVIS and Evins would identify a player on whose behalf defendant DAVIS and Evins were supposedly obtaining a loan. In actuality, no player authorized DAVIS and Evins to obtain any loans, and they instead impersonated the players, including using fraudulent ID documents.

11. It was further a part of the scheme and artifice to defraud that defendant DAVIS and Evins registered with the Georgia Secretary of State, companies with names closely related to the impersonated player's name or initials.

12. It was further a part of the scheme and artifice to defraud that defendant DAVIS and Evins opened bank accounts in the names of the fraudulent companies they had registered. Defendant DAVIS and Evins controlled these bank accounts, which were opened without the knowledge and the consent of the impersonated players.

13. It was further a part of the scheme and artifice to defraud that defendant DAVIS and Evins created fraudulent e-mail accounts that were purportedly used by the players who they were impersonating. The e-mail accounts were created without the knowledge and consent of these players.

3

14. It was further a part of the scheme and artifice to defraud that defendant DAVIS and Evins obtained fake identification documents in the names of the impersonated players, including fake driver's licenses.

15. It was further a part of the scheme and artifice to defraud that defendant DAVIS and Evins contacted brokers, including Sure Sports, to facilitate obtaining fraudulent loans for the players they were impersonating. Defendant DAVIS and Evins falsely represented to the brokers they represented NFL players interested in obtaining high dollar loans. To convince the brokers of their affiliation with – and representation of – the players, defendant DAVIS and Evins provided fraudulent documents, including fabricated personal financial statements, Secretary of State documents, and bank statements for companies purportedly operated by the players. The lenders, including, but not limited to, Aliya Sports and All Pro Capital Funding, in turn relied upon defendant DAVIS's and Evins's fraudulent misrepresentations regarding the players.

16. It was further a part of the scheme and artifice to defraud that defendant DAVIS and Evins attended the closings for loans fraudulently obtained in the names of the impersonated NFL players. If a broker arranged a virtual loan closing, the borrower, who the lender believed to be a professional football player, could attend the closing remotely by video conference. To verify the player's identity, the brokers arranged for a notary to be present and witness the player's signature on the loan documents. Unbeknownst to the broker and the lender, none of the players who were supposedly receiving the loans attended any of these closings. Rather, defendant DAVIS dressed in disguise and impersonated the players, providing fake identification documents to convince the notary.

4

17. It was further a part of the scheme and artifice to defraud that by impersonating the players during the virtual closing, defendant DAVIS and Evins caused the transmission of interstate wires.

18. It was further a part of the scheme and artifice to defraud that defendant DAVIS and Evins caused the loan proceeds to be deposited into one of the bank accounts in the names of the fake companies that they had opened and controlled, after which they would wire the funds to other business bank accounts for their actual companies, including Deed Chasers LLC and RockSource. Defendant DAVIS and Evins used the loan proceeds to purchase real estate, vehicles, and jewelry.

19. As a result of their scheme, DAVIS and Evins fraudulently obtained at least thirteen fraudulent loans totaling more than $19,845,000.

## Overt Acts

### D.N. Loan

20. On or about January 22, 2024, representatives from Sure Sports emailed defendant DAVIS and who they believed to be D.N., to confirm a virtual loan closing with D.N. that afternoon at The Hotel at Avalon in Alpharetta, Georgia, in the Northern District of Georgia.

21. To execute the closing, representatives from Sure Sports and Aliya Sports set up a recorded video conference with who they believed to be D.N. During the closing, "D.N." – who was being impersonated by defendant DAVIS – executed a promissory note with Aliya Sports for $4.025 million. To conceal his identity and impersonate D.N.,

5

defendant DAVIS wore makeup and a wig. The net loan proceeds were wired to a bank account controlled by defendant DAVIS and Evins.

22. During the virtual closing at The Hotel at Avalon, and prior to notarizing "D.N.'s" signature, the notary requested "D.N.'s" identification. Defendant DAVIS provided a fake Georgia driver's license for D.N., which had a photo of D.N. that was easily found online. D.N. did not have a Georgia driver's license and the license number was associated with a female from Savannah, Georgia.

### X.M. Loan

23. On or about March 31, 2024, representatives from Sure Sports emailed defendant DAVIS and who they believed to be X.M., to confirm a virtual loan closing scheduled to take place on the afternoon of April 1, 2024 at the Ritz Carlton in New York City.

24. On or about March 31, 2024, defendant DAVIS flew from Atlanta to New York, and on or about April 1, 2024, Evins flew from Atlanta to New York.

25. To execute the closing, representatives from Sure Sports and Aliya Sports set up a recorded video conference with who they believed to be X.M. During the closing, "X.M." – who was being impersonated by defendant DAVIS – executed a promissory note with Aliya Sports for $4.375 million. To conceal his identity and impersonate X.M., defendant DAVIS wore a wig. The net loan proceeds were wired to a bank account controlled by defendant DAVIS and Evins.

26. During the virtual closing at the Ritz Carlton, and prior to notarizing "X.M.'s" signature, the notary requested "X.M.'s" identification. Defendant DAVIS provided a

fake Georgia driver's license for X.M., which had a photo of X.M. that was easily found online. The number on the fake driver's license was not issued to any driver.

### M.P. Loan

27. On or about July 25, 2024, representatives from Sure Sports emailed defendant DAVIS regarding a loan for who they believed to be M.P., to confirm a virtual loan closing with M.P. for the morning of July 26, 2024 at a SpringHill Suites in Buford, Georgia, in the Northern District of Georgia.

28. To execute the closing, representatives from Sure Sports and All Pro Capital Funding set up a recorded video conference with who they believed to be M.P. During the closing, "M.P." – who was actually being impersonated by defendant DAVIS – executed a promissory note with All Pro Capital Funding for $3.3 million. To conceal his identity and impersonate M.P., defendant DAVIS wore a durag-style head covering. The net loan proceeds were wired to a bank account controlled by DAVIS and Evins.

29. During the virtual closing at the Spring Hill Suites, and prior to notarizing "D.N.'s" signature, the notary requested "D.N.'s" identification. Defendant DAVIS provided a fake Florida driver's license for M.P., which had a photo of M.P. that was easily found online.

All in violation of Title 18, United States Code, Section 371.

7

**Count Two**
**Aggravated Identity Theft**
**18 U.S.C. 1028A**

30. On or about July 25, 2024, in the Northern District of Georgia, the defendant, LUTHER DAVIS, aided and abetted by CJ Evins, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, that is, the driver's license in the name of M.P., during and in relation to wire fraud, in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

**Forfeiture**

31. Upon conviction of one or more of the offenses alleged in Count One of this Information, the defendant, LUTHER DAVIS, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, including, but not limited to, the following:

a. MONEY JUDGMENT: A sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses alleged in Count One of this Information.

b. FUNDS: $617,264.58 in funds seized from JP Morgan Chase Bank account ending 9972 held in the name of Pikes Holdings, LLC.

c. REAL PROPERTY:

i. Real property known as 170 Stonewyck Place, Roswell, Georgia 30076, and all buildings, appurtenances, improvements and attachments thereon, more particularly described as:

8

All that tract or parcel of land lying and being in Land Lots 660 and 681 of the 1st District, 2nd Section of Fulton County, Georgia, being Lot 12, Stonewyck Subdivision, as per plat recorded in Plat Book 312, page 123, Fulton County, Georgia Records, which plat is incorporated herein by this reference and made a part of this description.

Parcel ID No.: 12-2640-0680-125-9

32. If, as a result of any act or omission of a defendant, any property subject to forfeiture:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

**[CONTINUED ON NEXT PAGE]**

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of a defendant up to the value of the forfeitable property.

THEODORE S. HERTZBERG
*United States Attorney*

C. BROCK BROCKINGTON
*Assistant United States Attorney*
600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, Georgia 30303
Office:  (404) 581-6000
Fax:    (404) 581-6181
Georgia Bar No. 775084

10